FILED

10:40 am, 10/16/24

**Margaret Botkins
Clerk of Court**

# UNITED STATES DISTRICT COURT
# DISTRICT OF WYOMING

| | |
|---|---|
| JAKE STANLEY DEWILDE, | |
| Plaintiff, | |
| v. | Case No. 24-CV-84-SWS |
| ATTORNEY GENERAL OF THE UNITED STATES; and DIRECTOR OF THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES, | |
| Defendants. | |

## ORDER GRANTING DEFENDANTS' 12(b)(6) MOTION TO DISMISS

Plaintiff seeks to construct a machinegun and filed this lawsuit asking for a judicial declaration that 18 U.S.C. § 922(o) is facially unconstitutional. (ECF 1.) The matter is before the Court on the Defendants' Motion to Dismiss the Complaint (ECF 10) and supporting memorandum (ECF 11). Plaintiff filed an opposition to dismissal (ECF 12), and Defendants replied (ECF 13). With the Court's leave, Plaintiff also submitted notice of supplemental authority (ECF 16), to which Defendants responded (ECF 17). Having considered the parties' submissions, reviewed the record herein, and being otherwise fully advised, the Court finds and concludes Plaintiff's complaint must be dismissed for failure to state a claim on which relief can be granted.

## STANDARD OF ADJUDICATION

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal of a claim or complaint that fails "to state a claim upon which can be granted." As with all 12(b)(6) motions, the Court accepts the complaint's well-pled factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 555, 570 (2007)). In this case, though, Defendants do not contend the complaint's factual allegations are lacking; instead, Defendants

argue the complaint's legal premise is incorrect and does not entitle Plaintiff to any relief. Dismissal under Rule 12(b)(6) "is appropriate if the law simply affords no relief." *Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011). One of the purposes of Rule 12(b)(6) "is to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity." *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993) (citing *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989)).

## BACKGROUND

The Second Amendment to the U.S. Constitution provides, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." Plaintiff Jake Stanley DeWilde filed this action for declaratory and injunctive relief, claiming that 18 U.S.C. § 922(o) and its implementing federal regulation, 27 C.F.R. § 479.105(a), unconstitutionally ban the transfer or possession of machineguns in violation of the Second Amendment.[1] Throughout this Order, the term "machinegun" is used to refer to a weapon capable of automatically firing more than one round by a single function of the trigger, as generally defined by federal statute. 26 U.S.C. § 5845(b).

Mr. DeWilde has a concrete desire and plan to construct an M16 machinegun, so he applied to the Bureau of Alcohol, Tobacco, Firearms, and Explosives for approval to make the M16 rifle. (ECF 1-1.) The ATF denied his application to make an M16 machinegun, concluding it would

---

[1] Section 922(o) makes it "unlawful for any person to transfer or possess a machinegun" except for transfers or possession of machineguns "under the authority of" a federal or state governmental agency, or "any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect [May 19, 1986]." 18 U.S.C. § 922(o). The federal regulation, 27 C.F.R. § 479.105(a), provides that applications to make, transfer, or import a machinegun will not be approved where such making, transfer, or receipt of the machinegun violates the law, including § 922(o).

violate the Firearm Owners' Protection Act of 1986, of which 18 U.S.C. § 922(o) is included. (ECF 1-2, 1-3.) Based on at least one recent federal prosecution for unlawful machinegun possession in the District of Wyoming, Mr. DeWilde realistically fears criminal prosecution were he to go ahead and build the machinegun without approval from the ATF. (ECF 1-1.)

In this lawsuit, Mr. DeWilde relies on recent U.S. Supreme Court precedent to argue that § 922(o) is "facially unconstitutional" because it violates the Second Amendment. (ECF 1 p. 1.) Accordingly, he asks the Court to issue a declaratory judgment determining § 922(o) is "facially unconstitutional" and issue an injunction requiring the ATF to approve his application to build the M16 machinegun. (ECF 1 p. 7.) Unlike Mr. DeWilde's previous lawsuit challenging § 922(o), his standing to bring the claim in this case is not contested.[2]

Defendants seek dismissal of Mr. DeWilde's complaint under Rule 12(b)(6) for failure to state a claim on which relief can be granted, arguing § 922(o) is constitutionally sound as a matter of law. Mr. DeWilde, naturally, disagrees with Defendants' assessment of the law.

## **DISCUSSION**

Mr. DeWilde expressly limited his pro se complaint to assert only a facial challenge to § 922(o)'s machinegun restriction. (*See* ECF 1.) However, the Court liberally construes Mr. DeWilde's pro se complaint[3] as asserting both a facial and an as-applied challenge to § 922(o)'s machinegun restrictions. More on the differences between these two challenges will be discussed below.

"Like most rights, the right secured by the Second Amendment is not unlimited." *District*

---

[2] *See DeWilde v. Att'y Gen. of United States*, No. 23-8054, 2024 WL 1550708, at *1 (10th Cir. Apr. 10, 2024) (affirming this Court's dismissal of Mr. DeWilde's prior suit for lack of standing). For the instant action, the Court finds Mr. DeWilde has asserted an injury in fact sufficient to grant him standing to challenge the denial of his machinegun approval.

[3] Because Mr. DeWilde proceeds pro se (without the assistance of counsel) in this matter, the Court liberally construes his filings, but it cannot act as his advocate. *See Luo v. Wang*, 71 F.4th 1289, 1291 n.1 (10th Cir. 2023).

*of Columbia v. Heller*, 554 U.S. 570, 626 (2008). "From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.*; *see also New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 80 (2022) (Kavanaugh, J., concurring) ("Properly interpreted, the Second Amendment allows a 'variety' of gun regulations."). Two of the Second Amendment's limitations will control the outcome of this case and require dismissal of Mr. DeWilde's complaint for failure to state a claim on which relief can be granted.

First, as Mr. DeWilde's supplemental authority explained, one of the Second Amendment's limitations is that it applies to weapons one can "bear," i.e., carry. *See Heller*, 554 U.S. at 584 ("At the time of the founding, as now, to 'bear' meant to 'carry.'") This limitation defeats Mr. DeWilde's facial attack upon § 922(o) because § 922(o) also applies to circumstances involving automatic-firing weapons that are not carriable.

Second, if Mr. DeWilde's pro se complaint could be liberally construed to allege an as-applied challenge to § 922(o), the Second Amendment protects the right to keep and carry the sorts of weapons "in common use at the time." *Heller*, 554 U.S. at 627 (quoting *United States v. Miller*, 307 U.S. 174, 179 (1939)). As this Court explained in Mr. DeWilde's previous lawsuit, machineguns are not in common use, and Mr. DeWilde's argument that the U.S. military's use of machineguns places them in common use does not win the day. Thus, the Second Amendment does not create in Mr. DeWilde any right to keep and bear a machinegun, which defeats any as-applied challenge to § 922(o). Moreover, even if the Second Amendment could be found to apply to Mr. DeWilde's desire to possess an M16 machinegun, the restriction on such in 922(o) is "fairly supported by the historical tradition of prohibiting the carrying of dangerous and unusual weapons." *Heller*, 554 U.S. at 627 (2022) (internal quotation omitted).

1.  **Mr. DeWilde's express facial challenge to § 922(o) fails under his own supplemental authority.**

Mr. DeWilde's complaint expressly asserts that § 922(o) is facially unconstitutional. "Facial challenges are disfavored for several reasons." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008). Some bases for disfavoring facial challenges include the fact that they often rely on speculation, they demand the Court ignore judicial restraint, and they can overturn laws before the laws can be otherwise implemented in a constitutional manner. *Id.* The U.S. Supreme Court "has therefore made facial challenges hard to win." *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2397 (2024). "[A] plaintiff can only succeed in a facial challenge by 'establishing that no set of circumstances exists under which the Act would be valid,' *i.e.*, that the law is unconstitutional in all of its applications." *Washington State Grange*, 552 U.S. at 449 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)); *see also United States v. Streett*, 434 F. Supp. 3d 1125, 1172 (D.N.M. 2020), *aff'd*, 83 F.4th 842 (10th Cir. 2023) (stating that a successful facial challenge "requires that there exists 'no [other, theoretical] set of circumstances' in which the law could be constitutionally applied") (alteration in original) (quoting *Salerno*, 481 U.S. at 745); *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019) ("A facial challenge is really just a claim that the law or policy at issue is unconstitutional in all its applications.").

Here, the supplemental authority provided by Mr. DeWilde (ECF 16) demonstrates why he cannot prevail on his facial challenge to § 922(o). Mr. DeWilde supplemented his opposition to dismissal with a recent decision issued by the United States District Court for the District of Kansas in *United States v. Tamori Morgan*, No. 23-10047-JWB, 2024 WL 3936767 (D. Kan. Aug. 26, 2024). There, the trial judge dismissed certain criminal charges after determining § 922(o) was unconstitutional as applied to the circumstances in that case. Significantly for Mr. DeWilde's case, though, the District of Kansas first explained why a facial challenge to § 922(o) fails:

The Tenth Circuit has yet to apply *Bruen* to § 922(o). Therefore the court starts its analysis at the beginning: the statutory text. Section 922(o) generally makes it unlawful to "possess a machinegun." *Id.* Section 922 incorporates the definition of machinegun from 26 U.S.C. § 5845, which defines that term as

> any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

§ 5845(b). The court notes that this definition is extremely broad. It does not, for instance, include a projectile in the definition like the definitions for a "rifle" or "shotgun" do under 18 U.S.C. § 921 or § 5845. Nor does it require that a projectile or "shot" be expelled through the energy of an explosive or other propellant, as contemplated under the definitions of "rifle," "shotgun," "any other weapon" and "destructive" device" in § 5854(c) through (f), or the definitions of a "firearm," "shotgun," or "rifle" in § 921(a). Thus, this definition seems to encompass everything from an aircraft-mounted automatic cannon to a small hand-held taser or stun gun that can easily be placed inside a handbag and which shoots multi-shot bursts of electrical particles with a single pull of the trigger, or a fully automatic BB gun that shoots multiple rounds of metal projectiles using compressed air. The court is not, of course, faced with a situation where the government has charged someone under § 922(o) with illegal possession of a taser or a BB gun. But the example of the aircraft-mounted gun seems fatal to Defendant's facial challenge. Defendant fails to show how an example like that would constitute a "bearable arm" within the Second Amendment's protection. And to succeed on a facial challenge, Defendant must show that § 922(o) is unconstitutional in all its applications. *Rahimi*, 144 S. Ct. at 18[9]8.

*Morgan*, 2024 WL 3936767, at *1–2.

"[T]he Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not [yet] in existence at the time of the founding." *District of Columbia v. Heller*, 554 U.S. 570, 582 (2008). "As *Heller* explained, the term [bearable arm] includes any '[w]eapo[n] of offence' or 'thing that a man wears for his defence, or takes into his hands,' that is 'carr[ied] ... for the purpose of offensive or defensive action.'" *Caetano v. Massachusetts*, 577 U.S. 411, 416 (2016) (Alito, J., concurring) (second, third, and fourth alterations in original)

(quoting *Heller*, 554 U.S. at 581, 584).  Thus, the Second Amendment applies to wearable or carriable weapons or instruments of defense.

The District of Kansas readily identified a situation to which the Second Amendment would not apply (an aircraft-mounted cannon can automatically fire multiple rounds from a single trigger function but is not a carriable weapon), and therefore the Second Amendment would not preclude § 922(o)'s regulation of such a machinegun.  Mr. DeWilde has not shown that § 922(o) is unconstitutional on its face in all its potential applications.  His supplemental authority establishes that the law simply affords no relief for his facial attack upon § 922(o), and therefore the facial challenge will be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

2. **Had Mr. DeWilde asserted an as-applied challenge, it too would fail.**

Mr. DeWilde expressly limited his complaint to a facial challenge upon § 922(o). (*See* ECF 1.)  However, if his complaint could be liberally construed to also assert an as-applied challenge, it too would be dismissed for failure to state a claim on which relief can be granted.

"[A]n as-applied challenge concedes that the statute may be constitutional in many of its applications, but contends that it is not so under the particular circumstances of the case." *Carel*, 668 F.3d at 1217 (quoting *United States v. Pruitt*, 502 F.3d 1154, 1171 (10th Cir. 2007)).  When challenging a law as applied, challengers "seek to vindicate their own rights based on their own circumstances." *Scherer v. U.S. Forest Service*, 653 F.3d 1241, 1245 (10th Cir. 2011).

The significant circumstances of Mr. DeWilde's particular case include the following: (1) Mr. DeWilde is not otherwise dispossessed of his firearm rights under federal law (e.g., he is not a convicted felon, he is not subject to a domestic violence restraining order, etc.[4]); (2) Mr. DeWilde

---

[4] *See* 18 U.S.C. § 922(g).

seeks an M16 machinegun, an automatic rifle regularly issued to military personnel, for apparently lawful reasons, including the defense of his home and family; (3) Mr. DeWilde applied to the ATF for permission to construct an M16 automatic rifle from an existing AR-15 semiautomatic rifle; and (4) the ATF denied Mr. DeWilde's application, seemingly due to § 922(o), which provides that machineguns may only be transferred to or possessed by government agencies for official use (*see* ECF 1-2 p. 9; ECF 1-3 p. 2).

In *Bruen*, the U.S. Supreme Court created a two-step test for analyzing alleged violations of the Second Amendment:

(1) Does the Second Amendment's plain text cover the individual's alleged or desired conduct, which would presumptively protect such conduct?

(2) If so, has the Government justified the challenged regulation by showing it is consistent with the United States' historical tradition of firearm regulation?

*See Bruen*, 597 U.S. at 24.

### 2.1 The Second Amendment does not cover or presumptively protect Mr. DeWilde's desire to build and possess an M16 machinegun.

The first step in the *Bruen* analysis "demands a test rooted in the Second Amendment's text, as informed by history." *Id.* at 19. The Second Amendment's "operative clause—'the right of the people to keep and bear Arms shall not be infringed'—'guarantee[s] the individual right to possess and carry weapons in case of confrontation' that does not depend on service in the militia." *Id.* at 20 (quoting *Heller*, 554 U.S. at 592).

Significant to Mr. DeWilde's claim, one of the limitations on the Second Amendment recognized by the U.S. Supreme Court is that "the Second Amendment right, whatever its nature, extends only to certain types of weapons." *Heller*, 554 U.S. at 623 (discussing *United States v. Miller*, 307 U.S. 174 (1939)). More specifically, "the sorts of weapons protected were those 'in

common use at the time.'" *Heller*, 554 U.S. at 627 (quoting *Miller*, 307 U.S. at 179); *see Bruen*, 597 U.S. at 32 (concluding the Second Amendment protects "carrying handguns publicly for self-defense" in part because "handguns are weapons 'in common use' today for self defense").

Mr. DeWilde contends, "The M16 rifle, and its variants, are the standard small-arms weapons in common use by the United States military." (ECF 1 p. 5.) Accordingly, asserts Mr. DeWilde, "The M16 is the quintessential rifle for use in the modern militia, just as the musket was the quintessential rifle for use in the militia of the colonial and revolutionary war era." (*Id.*) He essentially argues that the U.S. military's use of machineguns like the M16 places machineguns "in common use," and therefore a civilian's desire to possess a machinegun is covered by the Second Amendment.

Mr. DeWilde's reliance on the standing military's use of a weapon as justification for deeming the weapon "in common use" is misguided and incorrect. The militia of which the Second Amendment speaks, i.e., "civilians primarily, soldiers on occasion," *Miller*, 307 U.S. at 179, is not the standing U.S. military of today, and the two cannot accurately be equated. At this Nation's founding, "[t]he sentiment of the time strongly disfavored standing armies; the common view was that adequate defense of country and laws could be secured through the Militia." *Id.* The weapons used by the founders' militia were necessarily the weapons used by the common citizen, as the militia and the citizenry were largely the same. *See Heller*, 554 U.S. at 624-25 ("In the colonial and revolutionary war era, [small-arms] weapons used by militiamen and weapons used in defense of person and home were one and the same.") (alteration in original) (quoting *State v. Kessler*, 614 P.2d 94, 98 (Ore. 1980)).

Times and sentiments have, of course, significantly changed. Standing armies with professional soldiers are now favored and necessary for the Nation's defense, and the modern-day standing military's weapons greatly exceed those of the average citizen. They are not the same,

and the U.S. military's use of the M16 machinegun simply does not render such a weapon "in common use." The Supreme Court previously commented on the gap that has developed between society's common weaponry and the military's weaponry and how that gap interplays with the Second Amendment:

> It may be objected that if weapons that are most useful in military service—M-16 rifles and the like—may be banned, then the Second Amendment right is completely detached from the prefatory clause. But as we have said, the conception of the militia at the time of the Second Amendment's ratification was the body of all citizens capable of military service, who would bring the sorts of lawful weapons that they possessed at home to militia duty. It may well be true today that a militia, to be as effective as militias in the 18th century, would require sophisticated arms that are highly unusual in society at large. Indeed, it may be true that no amount of small arms could be useful against modern-day bombers and tanks. But the fact that modern developments have limited the degree of fit between the prefatory clause and the protected right cannot change our interpretation of the right.

*Heller*, 554 U.S. at 627-28.

All this is to say that just because a weapon is used by the United States Armed Forces, even a weapon commonly employed by the Armed Forces, does not also mean it is necessarily "in common use" in the United States at large. As this is Mr. DeWilde's sole argument in favor of finding the M16 machinegun to be "in common use," he has not shown the Second Amendment extends to his desired possession of a machinegun at the first step of the *Bruen* analysis. Nor has he asserted that the M16 machinegun is "in common use" outside of military service, which is significant considering military personnel make up such a small fraction of the U.S. population.[5] And in any event, "[a]lthough the number of civilian-owned machineguns has increased to about 740,000, this amount—which is less than .2% of total firearms in the United States—remains too insignificant for machineguns to be considered in common use." *United States v. Simien*, 655 F. Supp. 3d 540, 554 (W.D. Tex. 2023); *see also United States v. Mitchell*, No. 1:24-CR-9, 2024 WL

---

[5] *See* Department of Defense, *Defense Department Report Shows Decline in Armed Forces Population While Percentage of Military Women Rises Slightly* (Nov. 6, 2023), available at https://www.defense.gov/News/Releases/Release/Article/3580676/ (reporting slightly more than two million U.S. service members in 2022).

2272275, at *4 (N.D. Ohio May 20, 2024) (agreeing with and adopting *Simien's* reasoning); *United States v. Berger*, 715 F.Supp.3d 676, 687-88 (E.D. Penn. 2024) (rejecting argument that machineguns are in "common use" and collecting caselaw from various jurisdictions rejecting similar arguments post-*Bruen*).

"It is no surprise … that courts have continued to hold, post-*Bruen*, that the Second Amendment protections simply do not extend to machineguns." *United States v. Bachmann*, No. 8:23-CR-304-VMC-CPT, 2024 WL 730489, at *3 (M.D. Fla. Feb. 22, 2024) (collecting cases and quoting *United States v. Kazmende*, No. 1:22-CR-236-SDG-CCB, 2023 WL 3872209, at *3 (N.D. Ga. May 17, 2023), *report and recommendation adopted*, No. 1:22-CR-00236-SDG, 2023 WL 3867792 (N.D. Ga. June 7, 2023)).  The Second Amendment does not create in Mr. DeWilde any right to keep and bear a machinegun, which defeats any as-applied challenge to § 922(o) at the first step of the *Bruen* analysis.

### 2.2 Section 922(o)'s machinegun restriction is fairly supported by the historical tradition of prohibiting the carrying of dangerous and unusual weapons.

Even if the Second Amendment could be said to protect Mr. DeWilde's desire to possess an M16 machinegun, the restriction on such in § 922(o) is well supported by the historical tradition of regulating the keeping and bearing of dangerous and unusual weapons.  Thus, any as-applied challenge would fail the second step of the *Bruen* analysis.

The second half of the *Bruen* test requires the Government to show the restriction "is consistent with the Nation's historical tradition of firearm regulation." *United States v. Rahimi*, 144 S. Ct. 1889, 1896 (2024) (quoting *Bruen*, 597 U.S. at 24).  The U.S. Supreme Court has acknowledged there exists "the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Heller*, 554 U.S. at 627 (collecting historical supporting sources); *see also Rahimi*, 144 S. Ct. at 1897 (noting that at the Nation's founding, "[s]ome jurisdictions banned the

carrying of 'dangerous and unusual weapons'").

The only question, then, is whether Mr. DeWilde's desired M16 machinegun constitutes a "dangerous and unusual weapon." The Court has little difficulty finding it does. "After *Heller*, the Courts of Appeals have uniformly held that machineguns are dangerous, unusual, and not in common use." *United States v. Mitchell*, No. 1:24-CR-9, 2024 WL 2272275, at *4 (N.D. Ohio May 20, 2024) (collecting cases). They are unusual because they are uncommon to society at large.

> A machine gun is "unusual" because private possession of all new machine guns, as well as all existing machine guns that were not lawfully possessed before the enactment of § 922(o), has been unlawful since 1986. Outside of a few government-related uses, machine guns largely exist on the black market.

*United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012), *cert. denied*, 568 U.S. 1149 (2013). And their dangerousness hardly needs to be explained.

> The machine gun was first widely used during World War I, where it "demonstrated its murderously effective firepower over and over again." William Rosenau, Book Note, *The Origins of the First Modern Weapon*, TECH. REV., Jan. 1987, at 74, (reviewing John Ellis, *The Social History of the Machine Gun* (1986)). A modern machine gun can fire more than 1,000 rounds per minute, allowing a shooter to kill dozens of people within a matter of seconds. *See* George C. Wilson, *Visible Violence*, 12 NAT'L J. 886, 887 (2003). Short of bombs, missiles, and biochemical agents, we can conceive of few weapons that are more dangerous than machine guns.

*Id.*; *see also United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber Serial No. LW001804*, 822 F.3d 136, 142 (3d Cir. 2016) (collecting cases and describing how machineguns are primarily weapons of war and are often favored by criminals because they can overpower other types of firearms).

In sum, § 922(o)'s machinegun restriction "is consistent with the principles that underpin our regulatory tradition." *Rahimi*, 144 S. Ct. at 1898. It is "relevantly similar," *Bruen*, 597 U.S. at 29, to the regulation of "dangerous and unusual weapons" existing and enforced since the

founding of the United States. Consequently, § 922(o) does not infringe upon the Second Amendment, and any as-applied challenge in this case fails at the second step of the *Bruen* test.

## CONCLUSION AND ORDER

The Second Amendment is not a second-class right, but it also is not without limits. Mr. DeWilde's facial challenge to the constitutionality of 18 U.S.C. § 922(o) falls flat as explained by his own supplemental authority, *United States v. Tamori Morgan*, No. 23-10047-JWB, 2024 WL 3936767 (D. Kan. Aug. 26, 2024). And to the extent his complaint can be liberally construed to also assert an as-applied challenge, the two-step *Bruen* test shows § 922(o) does not run afoul of the Second Amendment. Machineguns are a dangerous and unusual weapon and were not in common use then or even now. Accordingly, Mr. DeWilde has not set forth a claim on which relief can be granted.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss the Complaint (ECF 10) is **GRANTED**. Mr. DeWilde's Complaint for Declaratory and Injunctive Relief (ECF 1) is hereby **DISMISSED WITH PREJUDICE**[6] under Federal Rule of Civil Procedure 12(b)(6). The Clerk of Court will please enter a general judgment in favor of Defendants and close this case.

**DATED:** October 16th, 2024.

_____
Scott W. Skavdahl
Chief United States District Judge

---

[6] "A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). Mr. DeWilde's complaint fails because his claim for relief is fatally flawed in its legal premise, not for failure to plead sufficient facts. Therefore, amending his complaint would be futile because such amendment could not correct the flawed legal premise, and dismissal with prejudice, as an adjudication on the merits under Fed. R. Civ. P. 41(b), is appropriate.